UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

SIDNEY ALEXANDER JONES,

    Plaintiff,

v.

OFFICER ADRIAN ASHFORD,
*In Both His Official and Individual Capacities*,
TRANS WORLD ENTERTAINMENT
CORP., *d/b/a f.y.e.*, and
WESTFIELD, LLC, *d/b/a Wheaton Mall*,

    Defendants.

Civil Action No. TDC-14-3639

**MEMORANDUM OPINION**

Sidney Alexander Jones has filed this action pursuant to 42 U.S.C. § 1983 against Officer Adrian Ashford of the Montgomery County Police Department, Trans World Entertainment Corporation ("Trans World"), and Westfield, LLC ("Westfield") for alleged violations of his federal constitutional rights arising from an incident during which he was ordered to leave a shopping mall by a police officer and mall security officer. Jones also asserts that Defendants violated his state constitutional rights under Article 26 of the Maryland Declaration of Rights, Md. Const. art. XXVI, and committed the common law torts of false arrest, battery, and false light/invasion of privacy. Pending before the Court are Ashford's Motion for Summary Judgment, Trans World's Motion for Summary Judgment, and Westfield's Motion for Summary Judgment. For the reasons set forth below, the three Motions are granted.

## BACKGROUND

The following facts are presented in the light most favorable to the nonmoving party, Jones. On March 20, 2013, Jones, who was then 79 years old, entered the f.y.e. ("for your entertainment") store at the Westfield Wheaton Mall in Wheaton, Maryland ("the Wheaton Mall") with his adult daughter, who has disabilities relating to speech and hearing. Westfield operates the Wheaton Mall, and Trans World is the company that operates the f.y.e. chain of stores. Shortly after entering the store, Jones asked an f.y.e. employee whether the store had changed its policy on whether it would accept a check as payment. Jones asked because in the past, f.y.e. had not accepted checks. The employee appeared to recognize Jones from a previous incident at the f.y.e. store during which Jones had engaged in a loud discussion about the check policy. The employee asked Jones if he was making trouble, told him he was trespassing, and told him to leave the store. Jones responded, "Why should I leave when I am shopping" and went to find his daughter within the store. Jones Dep. 79, Trans World Mot. Summ. J. Ex. B, ECF No. 65-3.

An f.y.e. employee called Steven Olson, Security Director for Wheaton Mall, and requested assistance in dealing with a disruptive individual. According to Olson, when he arrived at f.y.e., the store manager informed him that Jones had gotten upset when f.y.e. would not accept a check as payment. When the manager explained the store's policy not to accept checks, Jones became more disruptive, and the manager asked him to leave the store multiple times. According to Olson, when he intervened and began speaking with Jones directly, Jones grew increasingly upset, leading Olson to ask him to leave the store and the mall, which Jones refused to do. Olson then called for a police officer to arrive to assist with an "irate individual." Olson Dep. 38, Trans World Mot. Summ. J. Ex. A, ECF No. 65-2. Jones, who had spent

approximately half an hour in the f.y.e. store, paid cash for items selected by his daughter, then left the store.

Officer Ashford then arrived on the scene. Olson informed Ashford that he wanted Jones to be issued a trespass notification form. Ashford told Jones that he had been asked several times to get out, that he was trespassing, and that Ashford wanted him "out of the mall." Jones Dep. 45-47. When Jones stated that he was not trespassing but instead had made a purchase in the store, Ashford shouted at Jones to leave the mall or he would be arrested. Jones refused, explaining that his wife was still in the mall. Ashford repeated the order to leave the mall, and Jones reiterated his concern about leaving without his wife. In total, Ashford ordered Jones to leave the mall at least four times.

Ashford then asked Jones where his wife was within the mall. When Jones reported that they had planned to meet in front of the Macy's department store, Ashford then escorted Jones to Macy's. Ashford did not touch Jones as he walked with him to Macy's. Jones and Ashford waited outside Macy's for a few minutes and, when his wife did not appear, Jones was escorted to the mall security office with Olson walking in front of him and Ashford behind him. According to Olson, Jones was taken to the security office in order to issue him a trespass notice. When Jones slowed down occasionally and asked why he was being taken to the security office, Ashford gave him a "nudge" or "push" and occasionally held his pants. *Id.* at 93-94. The push was hard enough for Jones to perceive it, but not so hard that he ever stumbled or lost his balance. Olson did not touch Jones during the walk to the mall security office.

At the security office, a trespass notification form was completed to memorialize that Jones had been barred from returning to the Wheaton Mall for one year, and Jones was photographed to facilitate his identification in the event he returned in violation of the notice.

Jones showed his driver's license as identification, but he refused to sign the trespass notification form. The photograph and a copy of the trespass notification form were filed in a storage cabinet to be accessed only by security personnel and discarded upon the expiration of the notice. According to Ashford, Jones was detained during this procedure in that he had to remain within the vicinity of Ashford and security personnel. The interaction in the security office lasted less than 20 minutes.

After providing Jones with the trespass notification form, Ashford again asked Jones to leave the mall. Jones reiterated that he would not leave without his wife. Ashford asked Jones to leave the mall at least once more. According to Ashford, he told Jones that if he did not leave, he would be arrested, to which Jones responded, "Then arrest me." Ashford Dep. 52, Trans World Mot. Summ. J. Ex. C, ECF No. 65-4. According to Ashford, he then told Jones that he did not want to arrest him, and he or security office personnel requested or ordered that he leave several more times, without success. At that point, Ashford decided that he had to physically remove Jones from the mall. Ashford grabbed Jones's left arm, elbow, and wrist in what he described as a "C-clamp." Id. at 54. When Ashford felt Jones become tense in response, which based on his experience could be a precursor to an assault, he then pulled Jones's arm behind his back. When Jones told Ashford that he was hurting him, Ashford immediately released Jones's arm. Ashford then physically pushed Jones through the mall and into the parking lot. In pushing Jones out of the mall, Ashford used enough force for Jones to feel it, but not so much that Jones ever stumbled, tripped, or fell. Jones did not suffer any physical injury as a result of the incident.

Jones sat on the curb in the parking lot area to wait for his wife. Ashford remained with Jones as he was waiting but did not tell Jones whether he was free to leave. When Jones's wife

and daughter arrived, Ashford explained to the wife what had occurred and that Jones had to leave the mall. Jones and his family then left the premises.

To Jones's knowledge, the only other individuals who learned about the incident at Wheaton Mall were his wife, his two daughters, and, indirectly, his dentist, who only knew that Jones had to cancel an appointment to attend a deposition about "an incident that happened at Wheaton." Jones Dep. 103-04. While walking him to the mall security office, neither Ashford nor Olson announced to mall patrons that Jones was detained for trespassing. Jones did not know anyone who was at the Wheaton Mall that day who might have seen any part of these events. There is no evidence that Jones's photograph was ever publicly displayed at the Wheaton Mall, and no one has ever informed Jones that his photograph was seen on display there.

## DISCUSSION

In this action, Jones has alleged violations of his constitutional rights against an unreasonable seizure and excessive force pursuant to 42 U.S.C. § 1983 (Count I) and Article 26 of the Maryland Declaration of Human Rights (Count IV), and the common law torts of false light/invasion of privacy (Count II), battery (Count III), and false arrest (Count V). In separate motions, Defendants seek summary judgment on a variety of grounds, including that Defendants did not unlawfully seize or detain Jones, that any detention was justified because Jones had violated Maryland law against trespassing, that Ashford did not use excessive force against him, that Ashford is entitled to qualified immunity because he did not violate a clearly established federal right, and that Defendants did not engage in any behavior that publicly portrayed Jones in a false light.

As an initial matter, the Court notes that in his October 26, 2016 Response to Defendants' Motions for Summary Judgment, Jones requests leave to amend Count I of his Complaint to add claims under: "(a) the Preamble of the U.S. Constitution, (b) the Public Accommodation Section of the 1964 Civil Rights Act, (c) the 1990 Americans with Disabilities Act, and (d) the 14th Amendment as well as the 4th Amendment." Resp. Mots. Summ. J. 3-4, ECF No. 71. Generally, "[t]he court should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, however, as set forth in the December 17, 2015 Scheduling Order, the Court set a deadline of February 1, 2016 for motions to amend the pleadings. Federal Rule of Civil Procedure 16(b) provides that a party must establish "good cause" to modify a deadline in a scheduling order. Fed. R. Civ. P. 16(b)(4). In seeking leave to amend in late October 2016, Jones missed this deadline by almost nine months. He has provided no explanation for the delay in seeking to amend the Complaint, and an amendment at this stage of litigation, following the completion of discovery, would prejudice the Defendants. *See Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010). Accordingly, Jones's request is denied. The Court considers each count as presented in the operative Amended Complaint, filed on March 27, 2015. ECF No. 11.

## I. Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts

supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. 42 U.S.C. § 1983

42 U.S.C. § 1983 allows individuals to file suit against government officials who violate their constitutional rights. 42 U.S.C. § 1983 (2012). A plaintiff alleging a violation of § 1983 "must prove that (1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 829 (1985). In his § 1983 claim, Jones asserts that Ashford deprived him of his Fourth Amendment rights to be free from unreasonable seizures and the use of excessive force to effect a seizure.

### A. Unreasonable Seizure

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. The United States Supreme Court has identified three categories of police-citizen interactions: (1) an arrest, which requires probable cause; (2) a brief investigatory stop, which requires reasonable suspicion; and (3) brief encounters, which do not implicate the Fourth Amendment. *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002). The first two categories constitute Fourth Amendment "seizures." *See id.* A seizure occurs

when, under the totality of the circumstances, "a reasonable person would not feel free to leave or otherwise terminate the encounter." *Id.* "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 568 (1988)). Circumstances indicative of a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see Weaver*, 282 F.3d at 310.

Ashford argues that his interactions with Jones fall under the third category and did not constitute a seizure. The initial encounter outside f.y.e. cannot easily be characterized as either an arrest or an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). Although Jones has asserted that Ashford confronted him when he left the store, at one point shouting at him, he has not claimed that Ashford sought to detain or question him at that point. Rather, Ashford told Jones, multiple times, to leave the mall, the opposite of detention. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1180 (7th Cir. 1994) (noting that no seizure occurs when an officer bars an individual from a limited area, such as an accident scene, but otherwise permits movement anywhere else). Although Ashford told Jones, who refused to leave, that he would arrest Jones if he did not leave the mall, an oral threat to arrest does not necessarily rise to the level of a constitutional seizure. *See id.* at 1180-81 (granting qualified immunity to an officer where it was not clearly established that his threat to arrest tenants if they did not vacate their residence effected a seizure in part because the circumstances of the encounter were "much looser than those that typically

characterize Fourth Amendment seizures"). Where Ashford was the only law enforcement officer present, he displayed no weapon, and he did not physically touch Jones, the orders to leave the premises did not necessarily constitute a seizure of Jones under the Fourth Amendment. Likewise, it is not clear that Jones had been seized when, after he explained that he was supposed to meet his wife in front of Macy's, Ashford walked with him to Macy's to find his wife. Jones acknowledged that Ashford was "gracious enough to walk to Macy's," that he was "polite" during the walk, and that there was "no altercation" at that time. Jones Dep. 90, 98. Up to this point, it appears likely that had Jones simply told Ashford that he would just leave the mall, Ashford would have permitted him to do so.

The evidence plainly establishes, however, that when Ashford and Olson escorted Jones from Macy's to the mall security office, he was no longer free to leave. Jones was not handcuffed or otherwise restrained, but he was effectively guarded by both Ashford and Olson. Ashford specifically instructed him to walk behind Olson and in front of Ashford. Moreover, Ashford physically pushed or nudged Jones forward when he slowed down and occasionally held him by the pants. Although Ashford's nudges were not particularly forceful, they served to compel Jones to follow a certain route through the mall to the security office. In fact, Olson recalled that Ashford took Jones by the arm as he escorted him to the security office. Under these circumstances, Jones reasonably would have concluded that his liberty was restrained and that he was no longer free to simply walk out of the mall. Olson effectively confirmed that Jones was no longer free to leave when he stated that Jones was brought to the security office for the purpose of issuing a trespass notice, which would help mall security personnel identify Jones in the event that he later returned. Finally, Ashford acknowledged that once Jones was at the security office and being processed for a trespass notice, he was "detained" and had to remain

"in the vicinity of myself and security." Ashford Dep. 41. Thus, the evidence establishes that Jones was subjected to a seizure within the meaning of the Fourth Amendment.

However, even when viewed in the light most favorable to Jones, the evidence establishes that the detention of Jones was reasonable. Reasonableness of a seizure "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Here, the detention was reasonable because Officer Ashford had probable cause to believe that Jones had committed the crime of trespass. Under Maryland law, a trespass occurs when a person "remain[s] on private property . . . after having been notified by the owner or the owner's agent not to do so." Md. Code Ann. Crim. Law § 6-403(b) (West 2002).

Jones has acknowledged that an f.y.e. employee told him that he was trespassing and that he had to leave the store, and that he did not leave the store immediately but instead decided to wait until he could make a purchase. Jones admitted that he remained inside f.y.e. for approximately half an hour. Olson confirmed that Jones got into a dispute with the f.y.e. store manager about the store's policy not to accept checks and that the manager asked Jones to leave the store multiple times. When Jones refused to leave and was disruptive, Olson asked him to leave the mall, but Jones did not comply. Olson called for a police officer and told Ashford that the f.y.e. manager had asked Jones to leave the store, and that Olson had told him to leave the mall and now wanted him to be issued a trespass notification form. Ashford then told Jones that he had been asked several times to leave, that he was trespassing, and that he had to leave the mall. Although Ashford ordered him to leave the mall multiple times, Jones refused, even when threatened with arrest. At that point, Ashford had probable cause to arrest Jones for trespass, because he was aware that the store manager had asked Jones to leave f.y.e., that Olson, a mall

representative, had asked Jones to leave the mall, and that Jones had refused to do so. *See Johnson v. State*, 740 A.2d 615, 621-22 (Md. 1999) (concluding that an officer had probable cause to arrest for trespass where it was reasonable for him to believe that the individual "was duly notified not to remain upon, enter or cross over" the property). Moreover, acting on behalf of Olson, a mall official, Ashford had made additional requests to Jones to leave the mall that went unheeded. *See Keene v. Hagerstown YMCA*, No. JFM-03-994, 2004 WL 2885365, at *2 (D. Md. Dec. 10, 2004) (acknowledging that the plaintiff could have reasonably been charged with trespass when she refused "to leave the premises despite [officers'] insistence that she do so" following a verbal altercation at a YMCA).

Jones's objections to the decisions by f.y.e. and the Wheaton Mall to order him to leave, and their refusals of his entreaties to remain, do not refute this conclusion. Jones may have believed that f.y.e.'s order that he leave the store for having challenged its policy not to accept checks was unreasonable. He may have had a legitimate reason to be reluctant to leave that store because his disabled daughter was still in the store. And he may have legitimately believed that he should not leave the mall without connecting with his wife, who was shopping at Macy's. But none of those arguments is a defense to statutory trespass, because Maryland law does not require that a private business owner or its representative meet a particular standard in deciding to revoke a patron's right to remain on its premises. *See Ward v. Wal-Mart Stores, Inc.*, No. JKB-13-1011, 2014 WL 279678, at *3 (D. Md. Jan. 22, 2014) (stating that evidence that a defendant refused to leave a store after being asked to leave is sufficient to establish criminal trespass); *cf. United States v. Ambrose*, 942 A.2d 755, 764 (Md. 2008) ("The underpinning of private property is that the owner controls and restricts the access and use of the property."). In any event, even if Jones had a plausible defense, none of his explanations refutes the conclusion

that Ashford had at least probable cause to believe that Jones had committed trespass. Because Ashford had probable cause to arrest Jones for trespass, his initial detention of Jones, transport of Jones to the mall security office, and processing of him for a trespass notification form were lawful and reasonable. *See Karadi v. Jenkins*, 7. F. App'x 185, 194 (4th Cir. 2001) (holding that the movement of a suspected shoplifter to a department store security office constituted an arrest, but it was justified by probable cause to arrest for obstructing a police officer in discharging duties).

### B.  Excessive Force

Jones also claims that he was subjected to excessive force, in violation of his Fourth Amendment rights, when Ashford touched him during the encounter and twisted his arm behind his back as he physically removed him from the mall. A claim of excessive force used during an investigatory stop or arrest invokes the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To assess whether the force used was reasonable and not excessive, a court must balance the governmental interests and "the nature and quality of the intrusion on the individual's Fourth Amendment interests." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The test is an objective one: whether the officer's actions are objectively reasonable under the facts and circumstances, recognizing that officers often must make "split-second judgments." *Id.* at 397. Relevant considerations include the seriousness of the crime, whether the individual poses an immediate threat to others' safety, and whether the individual is actively resisting or attempting to evade arrest. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" will rise to a Fourth Amendment violation. *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Notably, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396.

As recounted by Jones, there were two occasions when Ashford used varying degrees of force against him. As they walked from Macy's to the mall security office, Ashford nudged or pushed him along when he slowed down and occasionally held him by his pants. Jones acknowledged that these nudges were not hard enough to cause him to stumble. Where, as discussed above, Ashford was justified in conducting an investigatory stop and bringing Jones to the mall security office to issue a trespass notification form, he was entitled to use some force to do so. *Id.* The limited pushes or nudges to cause Jones to proceed to the mall security office were reasonable under the circumstances. *See Karadi,* 7. F. App'x at 194 (concluding that an officer acted lawfully when he grabbed the arm of the plaintiff, who was suspected of shoplifting in a department store, "for the purpose of effectuating his investigative detention" and to move her away from the store exit).

Ashford's later act of pulling Jones's arm behind his back to escort him out of the mall was markedly more forceful. It is undisputed that after Jones was processed for a trespass notification form, he still would not leave the mall. Ashford asked him multiple times to do so, but he refused. When told he would be arrested if he did not leave, Jones said, "Then arrest me." Ashford Dep. 52. Even then, Ashford asked Jones to leave several more times rather than arrest Jones. Some use of force was therefore appropriate to remove him from the premises.

According to Jones, Ashford twisted Jones's arm behind his back in a manner that caused pain. Ashford has explained that he initially grabbed Jones by the arm but pulled his arm back when Jones tensed up, which Ashford considered to be an indicator that Jones might assault him. Regardless of whether Jones, a 79-year-old man, posed a significant threat to Ashford, it is

undisputed that as soon as Jones said that the pulling of his arm was causing pain, Ashford immediately released the pressure on Jones's arm, and Jones did not suffer any physical injury as a result of Ashford's actions. He then pushed Jones out of the security office, through part of the mall, and into the parking lot. Jones acknowledged that he could feel Ashford pushing but that it did not cause him to stumble or fall. Where Jones's steadfast refusal to leave the mall justified some use of force, Ashford immediately released the hold he employed upon learning that it hurt Jones, and there was no physical injury, the Court concludes that the limited use of force was objectively reasonable under the circumstances. *See Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) (holding that when the plaintiff refused to move her vehicle when ordered to do so, a police officer did not use excessive force when he handcuffed her and dragged her to a police cruiser, causing her wrists to swell, where there was "no injury of any magnitude"); *Karadi*, 7 F. App'x at 195 (granting summary judgment in favor of the defendant on an excessive force claim even though the officer grabbed and squeezed a shoplifting suspect's arm, causing bruises, and handcuffed her when she resisted); *Darnell v. Phillips*, 914 F.2d 247, at *5 (4th Cir. 1990) (unpublished) (holding that when the plaintiff refused an order to leave the site of a field sobriety test, a police officer did not use excessive force when he handcuffed the plaintiff tightly and shoved him against a cruiser in effecting the arrest); *see also Mensh v. Dyer*, 956 F.2d 36, 40 (4th Cir. 1991) (considering the lack of physical injury in concluding that officers did not use excessive force when they handcuffed and pushed the plaintiff into a wall before realizing that they had arrested the wrong individual).

Because the Court has found that there are not sufficient facts for a jury to find a Fourth Amendment violation, a qualified immunity analysis is unnecessary. *See Pearson v. Callahan*,

555 U.S. 223, 232, 236 (2009). The Court grants summary judgment on the excessive force claim.

### III. Maryland Declaration of Rights

In Count IV, Jones asserts that Ashford violated his rights under Article 26 of the Maryland Declaration of Rights. Maryland courts construe Article 26 *in para materia* with the Fourth Amendment, such that its comparable provisions are essentially equated to the Fourth Amendment's protections against unreasonable searches and seizures. *Scott v. State*, 782 A.2d 862, 873 & n. 2 (Md. 2001). Accordingly, the resolution of Jones's § 1983 claim dictates the outcome of his claim under Article 26. *See Mazuz v. Maryland*, 442 F.3d 217, 231 (4th Cir. 2006), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Ashford is therefore entitled to summary judgment on Count IV.

### IV. False Arrest

In Count V, Jones alleges that Ashford, Trans World, and Westfield falsely arrested him. The elements of a false arrest claim are "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). Whether legal justification exists depends on whether the officer acted with legal authority to arrest. *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995). A private party may be liable for false arrest if it wrongfully detains an individual or knowingly gives false information to a law enforcement officer to cause another's arrest. *Id.* at 926-27; *Carter v. Aramark Sports & Entm't Servs., Inc.*, 835 A.2d 262, 284 (Md. Ct. Spec. App. 2003).

Although Jones was not formally arrested by Ashford, he was deprived of his liberty when he was briefly detained in the mall. As discussed above, however, Ashford had legal justification to detain Jones because there was probable cause to arrest him for trespassing in

violation of Maryland law. *See supra* part II.A. Consequently, Ashford is entitled to summary judgment on the false arrest claim. To the extent that Jones's false arrest theory derives from any assistance that Olson or other mall security personnel provided to Ashford during the lawful detention, Westfield is entitled to summary judgment on the false arrest claim as well.

Although Trans World and Westfield could be liable if their personnel knowingly provided Ashford with false information that led to Jones's detention, there is no evidence to support that theory. Both the f.y.e. store manager and Olson witnessed a dispute involving Jones and asked Jones to leave the premises, but he refused. Jones acknowledges that he had an altercation with an f.y.e. employee and that he refused to leave when asked. These facts alone were sufficient to cause Ashford to ask Jones to leave the mall and to detain him when Jones repeatedly refused to do so. Even if the degree to which Jones was disruptive remains in dispute, no identified communication from Trans World or Westfield personnel to Ashford, directly or indirectly, could be characterized as "knowingly false." Since there is no evidence in the record that an individual from f.y.e. or Wheaton Mall knowingly provided false information to Ashford that led to Jones's detention, Trans World and Westfield are entitled to summary judgment on the false arrest claim.

## V. Battery

In Count III, Jones alleges that Ashford committed the common law tort of battery against him. Under Maryland law, battery is the "unlawful application of force to the person of another." *Snowden v. State*, 583 A.2d 1056, 1059 (Md. 1991). An officer is not liable for battery, however, for using a reasonable amount of force when effectuating a lawful detention or arrest. *See Ashton v. Brown*, 660 A.2d 447, 471 n.24 (Md. 1995); *Busch v. State*, 426 A.2d 954, 958 (Md. 1981); *Hines v. French*, 852 A.2d 1047, 1055-56 (Md. Ct. Spec. App. 2004) (holding

that officers were entitled to judgment as a matter of law on claims of battery, false imprisonment, and false arrest where they had legal justification to arrest the plaintiff). Here, Ashford's first physical contact with Jones occurred after he had probable cause to arrest him for trespass. *See supra* part II.A. Having already concluded that Ashford had legal justification to detain Jones before he touched him, and that Ashford did not use excessive force during the encounter, the Court finds that Ashford is entitled to summary judgment on the battery claim.

## VI. False Light/Invasion of Privacy

Finally, Jones claims that all three defendants are liable for false light/invasion of privacy. The elements of a false light/invasion of privacy claim under Maryland law are: (1) the defendant gave "publicity to a matter concerning another that places the other before the public in a false light," (2) "the false light in which the other person was placed would be highly offensive to a reasonable person," and (3) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995) (quoting Restatement (Second) of Torts § 625E (Am. Law Inst. 1977)). Satisfying the publicity requirement necessitates proof that the disclosure was "communicated to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Holt v. Camus*, 128 F. Supp. 2d 812, 817 (D. Md. 1999); *see also Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 733 (D. Md. 2009).

Jones asserts that Defendants' "statements, misrepresentations and actions" "contained both explicit statements and implicit suggestions" that placed Jones in a false light, because they created the impression that he was "a trouble maker, criminal or otherwise undesirable." Am. Compl. ¶¶ 16-17, ECF No. 11. The potentially offending statements or actions include: (1)

f.y.e. staff, Olson, and Ashford ordering Jones to leave the store or mall and calling him disruptive or irate; (2) Ashford and Olson escorting Jones through the mall to the mall security office; and (3) the photographing of Jones at the mall security office. Regardless of whether there is evidence sufficient to create a genuine dispute on whether any of these statements or actions placed Jones in a false light, his claim fails because there is no evidence to establish the publicity requirement.

First, no evidence has been offered to show that that any member of the public in the vicinity of the f.y.e. store overheard any statements or representations exchanged between Jones and f.y.e. personnel, Olson, or Ashford that might portray Jones in a negative light. Even if individuals in or near the store had heard or witnessed the encounter, that small group of individuals cannot reasonably be deemed to constitute the public for purposes of the publicity requirement. *See Henderson*, 607 F. Supp. 2d at 733 (holding that the publicity requirement was not satisfied when, in the presence of other customers, a mall store employee accused the plaintiff of stealing merchandise and called the police to examine the plaintiff's credit card and identification).

Second, the escorting of Jones through the Wheaton Mall to the mall security office did not place Jones before the public in a false light. Although Jones asserts that he was "paraded through the mall . . . in front of dozens of patrons, as if he had committed a crime," Am. Compl. ¶ 11, Jones was not handcuffed. While Olson walked in front of Jones and Ashford behind, Ashford did not maintain a hold on Jones during the walk, and there was no evidence that Ashford or Olson announced to the patrons why they were walking with Jones through the mall. *See Hill v. Abercrombie & Fitch*, No. ELH-11-00910, 2011 WL 4433573, at *11 (D. Md. Sept. 10, 2011) (dismissing false light claim based on security guards escorting the plaintiff, a

shoplifting suspect, through a mall where the plaintiff was not handcuffed, the guards did not broadcast insults or publicly accuse him of a crime, and he was not "forcibly dragged out of the mall").

More importantly, no evidence has been offered to show that Jones's detention during the walk to the mall security office was publicized more broadly. Jones has acknowledged, first, that he did not know anyone in the mall that day who may have seen what occurred and, second, that only his immediate family and his dentist, to whom he told generally that he had had an incident at Wheaton Mall, had any knowledge of what transpired that day. These undisputed facts establish that the publicity element of Jones's false light claim has not been satisfied. *See Holt*, 128 F. Supp. at 817 (dismissing a false light claim where there was no allegation that the allegedly defamatory statement was disseminated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge").

Finally, Jones's assertion that his reputation has been damaged because of the possibility that the photograph taken for the trespass notification form was later posted publicly in the mall is unsupported by evidence. Olson has stated that such photographs are placed in a filing cabinet and later discarded, and Jones has conceded that he has no knowledge that his photograph was ever displayed publicly or that anyone saw his photograph posted in the mall. Mere speculation that the photograph might be posted for public viewing does not constitute actual publicity as required to establish a false light claim. Where the record shows no undesirable disclosure sufficiently broad in nature to establish "publicity," the Court grants summary judgment on the false light/invasion of privacy claim in favor of all Defendants.

## CONCLUSION

For the foregoing reasons, Ashford's Motion for Summary Judgment, Trans World's Motion for Summary Judgment, and Westfield's Motion for Summary Judgment are granted. Jones's Amended Complaint is dismissed with prejudice. A separate Order shall issue.

Date: January 18, 2017

THEODORE D. CHUANG
United States District Judge